March 8.
JUDGE CARR,
delivered his, opinion.
John Kelly married a lady of the name of Paine, and received by her (it is said) twelve slaves. She died, leaving five children. In 1797, John Kelly, being about to marry a second wife, executed a Deed of gift conveying to his children, in different proportions, all the slaves he had received by their mother, which were to be delivered to them “at lawful age, or marriage.” This Deed was duly recorded; and the slaves were, at different periods, delivered to the children. The second marriage took effect, and eight children were the fruit of it. In 1809, one Yates, by Will, bequeathed to the children of Kelly by bis first wife $1000, to be equally divided among them. In 1810, Kelly was appointed guardian of his children as to this legacy, and not long *654 after received the money. On the 31st of March, 1814, J. Kelly and his wife executed five Deeds, conveying to each of his children by his first *wife, one hundred acres of land, which it is agreed on all hands were worth more than their shares of the legacy. All these children were then of age, except one. The consideration expressed in the Deeds, is natural love and affection, and o.ue dollar. The Deeds were accepted, recorded, and the children took possession of the land. In 1815, J. Kelly made his Will, in which he gives again to the children by his first wife, the slaves and land before conveyed. He gives the rest of his land and slaves to his wife, for life; and at her death, the 'land to be divided among his children by the last wife, and slaves, among all his children by both wives. In 1820, J. Kelly died; and in 1822, the children by the.first wife filed their bill against their father’s ■executors, to recover their legacy of S1000, left them by Yates. The Chancellor dismissed their bill, and they appealed to this Court.
The only question in the cause, is, •whether this legacy must not be taken as satisfied by the land cbnveyed to the Plaintiffs in 1814? This, it will be observed, is not a question whether a debt is extinguished by legacy; nor, whether a provision secured to children by settlement, is satisfied by portions given them by the Will of a parent; nor yet, whether a legacy be deemed by an advancement made in the life of the testator; but simply, whether a parent, owing to his children a debt, and making them a Deed for property of greater value than the debt, shall be considered as having given them this property (leaving the debt still unpaid.) or as having discharged the debt by the conveyance of the property.
We will consider this question, first, on the presumption arising from the acts of the parties; secondly, on the evidence.
On the first head, I will cite some cases, which seem to me very strongly in point.
Wood v. Bryant, 2 Atk. 521: The Plaintiff’s wife was entitled to the residue of her grandmother’s estate under her Will, and likewise was left executrix, and durante *minore aetate her father was administrator. At the time of her marriage with the Plaintiff, he was, by agreement, to have 8001. from the father; which, in the settlement, is mentioned to be a portion, and in consideration of natural love and affection. The father being dead, this bill was filed against his representative, for a settlement of the grandmother’s estate; and it was insisted, that the 8001. paid by her lather on her marriage, was not in satisfaction of this residue, especially as it was expressed to be given for natural love and affection, and as the father, at the time of the marriage, was worth 8,0001. and had but this daughter and a son; and Chidley v. Lee, Prec. in Ch. 228, was cited, where a portion given in this way had been decided to be no satisfaction. .There was evidence given of parol declarations made by the Plaintiff and his' wife shortly after the marriage, that the 8001. were intended as a satisfaction of the residue, as well as a portion ; and on the other side, declarations of the father, that the residue amounted to 5001. and that he intended to give the Plaintiff 10001. more; and that six weeks before his death, he told the Plaintiff, “Thou knowestl owe thee a great deal of money, and thou shall not be wronged of a farthing.” Lord Hardwicke says, “The first question is, whether there is a presumptive satisfaction of the legacy to the Plaintiff’s wife, under the grandmother’s Will, by the 8001. being advanced to her by the father on her marriage. I do not think any rule can be laid down, but the cases must depend upon their particular circumstances. There are very few cases where a father will not be presumed to have paid the debt he owed to a daughter, when, in his life-time, he gives her in marriage a greater sum than he owed her; for, it is very unnatural to suppose, that he would choose to leave himself a debtor to her, and subject to an account. As to the cáse of Chidley v. Lee, the ground Sir John Trevor went upon was, that the husband knew nothing of the legacy to the wife from a collateral ancestor, and therefore held it was not satisfied by *the portion. But, I must own, that I think that an extreme hard case; and I believe I should have been inclined to have decided it otherwise. If the present case, therefore, rested on the presumption only, I should be of opinion that the 8001. was a satisfaction of the residue, under the grandmother’s Will.” The parol evidence he considered as making the case still stronger for the defendant, and refused the account (as to the residue) prayed for.
Seed v. Bradford, 1 Ves. sen. 501: B. was indebted to his daughter 1041. being oné-fifth of a legacy left her and her four sisters, by their grandfather. Upon the marriage of the Plaintiff with the daughter, B. agreed to give his daughter 4001. On the wedding day, B. brought forward the money, and one witness stated that he said, “There is the money I give my daughter, but that is not all.” The marriage took place in 1740. The wife died in 1742; the father in 1746. No demand was made of the legacy during the father’s life. The husband, as administrator of his wife, filed this bill to recover the legacy. The case of Wood v. Bryant, (quoted above,) was relied on for the Defendant. Sir John Strange dismissed the bill. He said, the demand should have been made in the life of the father, who was a party to the transaction, and could have given some account of it: that there was no occasion for an express stipulation, that the 4001. were paid in full satisfaction of the legacy, and not out of his own pocket; but, every case must be taken with the circumstances upon which the Court goes, to see whether, from the nature of the transaction and demand, it is not implied that the money thus given in the lump, included what the father gave by bounty, and also, what came to his hands, as belonging to his child. That is the natural transaction; and otherwise, the Court must suppose he - meant to give the 4001. out of his own pocket, and suffer *655 himself still to remain liable to that demand and interest.
The only other case X shall cite, is Chave v. Farrant, 18 Ves. 8: B. gave by Will to his grand daughters, Mary, *Sarah and Betty Tarrant, 1501. each. These legacies came to the hands of their father. His daughters all married during his life, and he gave to, or in trust for, each, a marriage portion of 1,0001. No demand of the legacies was made in his life time; but, the three daughters and their husbands filed the bill for their legacies of 1501. with interest. Sir William Grant says, “Upon looking into the settlements, I find nothing from which any inference can be drawn as to the intention of the parties. In Mrs. Chavis’s, her father covenants to pay 1,0001. for the portions of his daughters. It does not appear, that the husbands knew of the debts. My opinion is, that the father giving the portion, must be taken as meaning to satisfy the debt he owed as executor of the grandfather. That is es-tablised, in opposition to Chídley v. Lee, by the more recent cases of Wood v. Bryant, and Seed v. Bradford;” (the two before cited.) He then repeats the words of Lord Hardwicke, in Wood v. Bryant.
These cases, it will be observed, clearly establish this point; that in the absence of ail explanatory evidence, a father advancing his child, to whom he is at the same time in debt, shall be presumed to do so, with a view to the discharge of the debt, if the sum advanced be sufficient; and that, even though it is a portion given in marriage. The case before us is much stronger than those cited, to raise the presumption -of payment; for, the advancement here, was not made on the marriage of the children, nor when there was any other reason for it, than the wish of the father to discharge his debt. It was made by five Deeds, bearing the same date, conveying to each child the same quantity of land, one of them being still an infant, and giving them, exclusive of this, an equal, and some witnesses say, a better portion of his estate, than his younger children.
If it be objected that the legacy was a money debt, and the property conveyed, land, and that therefore, upon the doctrine • of ejusdem generis, the latter cannot be considered *as a satisfaction of the former; I answer that this conclusion is by no means sound. A careful examination of the cases on his subject will show, that all depends upon intention. This intention you must ascertain in the best manner you can', from all the circumstances attending the act. When a child is entitled to a portion of 5001., or rhe father has lett him 5001. by Will, and after-wards, in his life, advances him 5001.; this sum being the same in amount and the same in kind, these are taken as circumstances tending to show, that the advancement was made in satisfaction of the portion or legacy. On the contrary, if the advancement was land, it is taken as prima facie going to show, that it was not intended as a satisfaction of the 5001., they being different things. But yet, these are mere presumptions, liable to be rebutted and overthrown. Tor, if it be made to appear, that the father did not intend the 5001. advanced, to go in satisfaction of the portion or legacy, it will be no satisfaction, though ejusdem generis; and if we be convinced, that he did mean the land as a satisfaction, it will be so taken, though not ejusdem generis. Tor the cases showing this to be the Law, I refer to Jones v. Mason, ex’r &c., 5 Rand. 577. Now, I have stated the strong facts in this case, which show so clearly the intention of the father to discharge his debt by the cpnveyance of the land.
But if, leaving the ground of presumption, we come to the evidence, the case is put beyond doubt; for, it is proved, that the father, in the first place, offered to sell to his children, this same land at ¡88 per acre; thus clearly proving, that he did not intend to give it. They refused to give that price, but said, that they would take the land for their legacies, and on no other terms; and soon after the Deeds were executed and sent to them, and they received them upon the understanding, as every one must see, and as two or three of the Plaintiffs declared, that they were made to discharge the debts. But, they were a payment and a bounty too; for, they overpaid the legacies double and *treble. In addition to this, the Deeds were made in 1814, and the father lived till 1820, and during all that time we hear not a word from the Plaintiffs about the legacy; no demand. Why? Because they were conscious that they were paid.
I am clear, therefore, on every ground, to affirm the Decree.
The other Judges concurred, and the Decree was affirmed.